Phillip T. Whiteaker, Judge, concurring.
I agree with the majority that Kohlman failed to preserve his due-process arguments as presented to us. I also agree that on the facts and the law as it has been presented to us in this case, we must *602 affirm-the Department and the court checked all the correct boxes. I write, however, to express my opinion that the best interest of the children should not be relegated to simply checking the boxes.
In dependency-neglect proceedings, courts are weighing two great legal principles: (1) the fundamental liberty interest of parents in the care, custody, and control of their children ( Troxel v. Granville , 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) ) and (2) the best interest of children ( Porter v. Ark. Dep't of Health & Human Servs. , 374 Ark. 177, 185, 286 S.W.3d 686, 693 (2008) ). These two principles are not inherently opposed to each other. In fact, we begin with the premise that the primary goal of every case should be reunification and strengthening of the parental bond. See Ark. Code Ann. § 9-27-302 (Repl. 2015). This is because few consequences of judicial action are so grave as the severance of natural family ties. Benedict v. Ark. Dep't of Human Servs. , 96 Ark. App. 395, 242 S.W.3d 305 (2006) (citing Santosky v. Kramer , 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (Rehnquist, J., dissenting)). As a result, when the state removes a child from a parent, it has a duty to attempt reunification unless doing so would be detrimental or destructive to the health and well-being of the child. See Ark. Code Ann. § 9-27-302.
Thus, at the outset of every dependency-neglect action, the focus of the trial court, the Department, and the attorney ad litem (AAL) should be to identify what action should be taken to promote the best interest of the child and to strive for reunification if possible. Yet, time and time again, we are faced with reviewing an appeal of a termination in which attempts at reunification with the father have either taken a backseat to an attempt at reunification with the mother or, as here, a known putative father with ties to the child is left to linger as a nonparty until the decision to terminate is a foregone conclusion. Here, Kohlman was identified as a putative father from the onset of the proceeding, but he was provided minimal services and was not even named as a party to the proceedings until the decision to terminate had been reached. This practice cannot, and does not, effectively serve the best interest of children. It is in the best interest of children to identify all potential family placements for the child instead of allowing the child to languish in foster care. It is in the best interest of children to provide all sources of financial support available to the child. These best-interest goals cannot be accomplished as long as we continue to provide putative fathers no more than a cursory attempt to even be included in the proceedings. Simply put, the best interest of children requires more than the bare minimum that is being afforded. If we truly intend for the focus to be on the best interest of the child, something must change. The court, the Department, and the AAL, who has been appointed to represent the best interest of the children, must do more. Putative fathers must be identified and made parties as soon as possible so that they may become more involved in the process earlier in the proceedings. By doing so, the children have more opportunities for placement and support. If we continue to only check the boxes, the system fails, and the children lose.